UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

       -v-

THOMAS FARESE,

                                        Ind. No. 12 Cr. 94 (FB)

       *Defendant*,

----------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
# THOMAS FARESE'S APPLICATION FOR
# RELEASE ON BAIL PENDING TRIAL


Sarita Kedia
Sarita Kedia Law Offices, P.C.
5 East 22nd Street, Suite 7B
New York, New York  10010
(212) 681-0202

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA,

    -v-

THOMAS FARESE,

                Ind. No. 12 Cr. 94 (FB)

    *Defendant*,

---------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF THOMAS FARESE'S APPLICATION FOR RELEASE ON BAIL PENDING TRIAL

### PRELIMINARY STATEMENT

This memorandum is respectfully submitted in support of Thomas Farese's application for bail pending trial pursuant to 18 U.S.C. § 3142.[1] This case, as a review of the charges against Mr. Farese reveals, is not one which calls for presumptive detention under the provisions of the Bail Reform Act. See 18 U.S.C. § 3142(e). Hence, Mr. Farese comes before this Court both presumptively innocent and presumptively eligible for release on bail. Therefore, for the reasons discussed below, the Bail Reform Act requires Mr. Farese's release at this pretrial juncture. See United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007).

---

[1] We respectfully submit this memorandum in anticipation of the government's arguments at the bail hearing based on its arguments before the magistrate judge in the Southern District of Florida ("SDFL") following Mr. Farese's January 5, 2012, arrest in that jurisdiction. Due to an oversight, Mr. Farese has not yet been transported to this jurisdiction. Thus, we waive his appearance at the bail hearing before this Court.

1

## THE CHARGES AND THE EVIDENCE

Mr. Farese stands charged with one count of conspiring to launder money and one count of substantive money laundering. Specifically, it is alleged that Mr. Farese conspired with and aided his co-defendant Pat Truglia in laundering $40,000 for a cooperating witness Reynolds Maragni. Mr. Farese has pleaded not guilty and intends to request that he receive a speedy trial.

The evidence proffered by the government to support the charges against Mr. Farese is that on November 15, 2011, Maragni, while cooperating with the government and recording his conversations at the government's direction, met with Mr. Farese's co-defendant Pat Truglia and told him that he needed to "'wash' the proceeds of his loansharking business and that the defendant Pat Truglia volunteered to do it for [him]." See Complaint at 11-12, ¶ 21, Ex. A.[2]

The following day, November 16, 2011, Maragni informed Mr. Farese that he had $40,000 in his briefcase that he planned to give Truglia to "clean" for him. Id. at 12, ¶ 22.[3] According to the government, Mr. Farese participated in the alleged money laundering transaction by asking Maragni whether he had "mentioned to [Truglia] that [Farese] know[s] about it." Id. at 13, ¶ 22. The government further alleges that Mr. Farese participated in the transaction by asking on December 11, 2011, approximately 10 days after the transaction was complete, whether "[t]he kid did [his] thing with the scratch okay." Id. at 20, ¶ 28.

---

[2] Although Maragni recorded a portion of his conversation with Mr. Truglia that day, the government claims that the device "malfunctioned" during the portion of the conversation it proffers. Id. at 11-12, ¶ 21.

[3] Although the government maintains that Mr. Farese knew that the money Maragni had asked Truglia to clean came from "shylocking," Maragni's statement that the money came from "Dennis" and "from his business money" undermines that claim. Id. Inarguably, if Maragni had truly wanted to ensure that Mr. Farese believed the money he was giving to Truglia to be the proceeds of specified illegal activity, there would have been no reason to state that he "got [the money] from Dennis" – a person known to Mr. Farese to have a meat and produce business with Maragni – and "from his business." He would have simply made clear that the funds were derived from his loansharking activity. His failure to do so speaks volumes.

Although the government maintains that, by asking Maragni if he had mentioned to Truglia that Mr. Farese knew about the transaction, Mr. Farese had "authorized the proposed money laundering transaction and the defendant Pat Truglia's role in that transaction," id. at 14, lacking from the government's proffer, and indeed the evidence, is any proof that Mr. Farese did anything more than be told by Maragni about it. Thus, it appears that the government's evidence is legally insufficient to support the crimes charged.

In addition to the evidence regarding Mr. Farese's supposed involvement in Truglia's "cleaning" of $40,000 for Maragni, the government proffers that Mr. Farese is a member of the Colombo crime family and took a high-ranking position in the family around the time of the conversation. Id. at 9. Not only does the evidence fail to support the government's contention as to Mr. Farese's supposed position, but it also fails to prove that Mr. Farese is a danger to the community or a risk of flight. Indeed, although Maragni, at the government's behest, surreptitiously recorded numerous conversations between himself and Mr. Farese from May through December 2011, as well as other conversations in which Mr. Farese was mentioned, no conversation shows that Mr. Farese is a danger. Indeed, they fail to show that Mr. Farese committed any crime whatsoever.

Moreover, given the rather small amount of money Mr. Farese ostensibly assisted Maragni in laundering – $40,000 – even if convicted at trial, the guidelines call for a sentence of 27 to 33 months imprisonment, presuming a Criminal History Category of III, where we believe Mr. Farese would fall. Therefore, even if the evidence were stronger – which it is not – the crime for which Mr. Farese is charged not the most serious, does not involve violence, and calls

3

for a relatively low sentence. In light of this, it is particularly unlikely that Mr. Farese poses a risk of danger or flight that cannot be sufficiently mitigated by the proposed release conditions.

## THE PROPOSED BAIL PACKAGE

Mr. Farese offers a substantial bail package to guarantee his appearance in court and eliminate any concerns regarding the safety of the community. Specifically, to ensure compliance with his release conditions, Mr. Farese proposes a one million dollar bond secured by property owned by his wife Suzanne Farese. He additionally proposes the following restrictive conditions:

(1) Home detention with electronic monitoring in the Southern District of Florida, expect for necessary travel to the Southern and Eastern Districts of New York for court appearances and counsel visits;

(2) No association with members or associates of organized crime;

(3) No association with co-defendant except in the presence of counsel;

(4) Reporting to Pretrial Services as required;

(5) Surrender of passport with no applications for new travel documents;

(6) Any other condition the Court deems necessary.

**ARGUMENT**

**MR. FARESE IS ENTITLED TO RELEASE ON BAIL**

Because "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," United States v. Salerno, 481 U.S. 739, 755 (1987), the Bail Reform Act requires a defendant's release on the "least restrictive" conditions necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community." See 18 U.S.C. § 3142(c)(1)(B) (emphasis added). Thus, in seeking the defendant Thomas Farese's pre-trial detention, the government overlooks not only the language of the Bail Reform Act which favors release, but also prevailing case law which makes clear that "it is only a 'limited group of offenders' who should be denied bail pending trial." United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007) (quoting United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987) (internal citations omitted)) (emphasis added).

Where, as here, detention is not presumed by virtue of the charged offense, the government carries a dual burden. See Sabhnani, 493 F.3d at 75. First, it must prove by clear and convincing evidence that the defendant poses a danger or a flight risk, see 18 U.S.C. §§ 3142(e) and (f). See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). If it is able to satisfy that burden, the government must then demonstrate that "no condition or combination of conditions" will sufficiently reduce the risk. See 18 U.S.C. §§ 3142(e) and (f); Sabhnani, 493 F.3d at 75 (citing Chimurenga, 760 F.2d at 405). The government cannot satisfy either prong in this case.

To determine whether release is required based upon the presence of sufficient conditions, the Court must consider the following factors: (1) the nature and circumstances of the

5

offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  See 18 U.S.C. § 3142(g); see also Sabhnani, 493 F.3d at 75; United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993).

An analysis of these factors reveals that the government cannot meet its burden to show that Mr. Farese presents a danger to the community or risk of flight that appropriate conditions of release cannot sufficiently alleviate.

### I. MR. FARESE CANNOT BE DETAINED ON DANGEROUSNESS GROUNDS

#### A. The Bail Reform Act does not authorize the government to seek detention based on dangerousness in this case

18 U.S.C. § 3142(f)(1) permits the government to move for detention based upon a person's alleged dangerousness only in the circumstances enumerated in §§ 3124(f)(1)(A) – (f)(1)(D).  In the event that none of those circumstances exists, the government may not move for detention on dangerousness grounds.  See United States v. Himler, 797 F.2d 156, 160 (3d Cir. 1986) (The Bail Reform Act does not authorize "pretrial detention upon proof of danger to the community other than from those offenses which will support a motion for detention."); United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988) ("Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists.").

Indisputably, the money laundering and money laundering conspiracy charges contained in the indictment do not in themselves enable the government to seek detention on dangerousness

grounds as they do not qualify under 18 U.S.C. §§ 3142(f)(1)(A), (B), (C) or (E). Thus, the government is not entitled to seek Mr. Farese's detention on dangerousness grounds unless he previously "has been convicted of <u>two or more offenses</u> described in paragraphs (A) through (C) of [18 U.S.C. § 3142(f)(1)] or two or more States or local offenses that would have been offenses described in subparagraphs (A) through (C) … if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses." 18 U.S.C. § 3142(f)(1)(D).

We do not dispute that Mr. Farese has been convicted of <u>one</u> such offense, although we note that it was more than 30 years ago.[4] In 1980, Mr. Farese was convicted of an offense involving controlled substances (marijuana) for which a maximum term of imprisonment of ten years or more was prescribed. He was sentenced to a 24-year term of imprisonment and was released in 1994 after serving 14 years. Mr. Farese was not, however, convicted of a second crime qualifying as a predicate under § 3142(f)(1)(D).

In proceedings held before a magistrate judge in the SDFL upon Mr. Farese's arrest, the government claimed that Mr. Farese has a 1965 conviction for attempted extortion in Massachusetts which qualifies as a second offense under § 3142(f)(1)(D). For several reasons, however, this is not the case. First, it appears from an NCIC report provided by the government that Mr. Farese was convicted of an offense "other" than attempted extortion. <u>See</u> Ex. B, Cycle 011. Mr. Farese recalls this was the case as well, but does not recall specifically of what he was

---

[4] Although § 3142(f)(1)(D) does not provide a time period in which the defendant must have previously been convicted of two of more qualifying offenses, it is important to note that the convictions upon which the government relies are 32 years and 47 years old respectively. Indeed, given their age, neither would be counted in determining Mr. Farese's criminal history under U.S.S.G. §§ 4A1.1 and 4A1.2(e).

7

convicted.[5] As disclosed in a newspaper report from 1965, the testimony regarding the attempted extortion charge was that Mr. Farese told an individual by the name of James Karalekas (who was Mr. Farese's neighbor) that he had mistakenly been issued low-numbered license plates for his vehicle – which at that time signified that one was a person of importance – and that if he wanted to keep them, he needed to pay Mr. Farese 800 dollars. See Article from The Boston Globe, Ex. C. Mr. Karalekas did not pay the 800 dollars, and the next morning the low-numbered plates were missing. Id. Mr. Farese was ultimately convicted of some offense and was sentenced to one year in a local jail. Notably, the offense occurred some 50 years ago when Mr. Farese was 19 years old and the conviction when he was 22.

Second, even if Mr. Farese had been convicted in 1965 of attempted extortion – which does not appear to be true – it is not "a crime of violence … for which a maximum term of imprisonment of 10 years or more is prescribed" and thus does not qualify under § 3142 (f)(1)(A).

The statute at issue, Mass. Gen. Stat. Ch. 265, § 25, provides in relevant part:

> § 25. Extortion by Threat.
>
> Whoever, verbally or by a written or printed communication, maliciously threatens to accuse another of a crime or offence, or by a verbal or written or printed communication maliciously threatens an injury to the person or property of another … with intent thereby to extort money or any pecuniary advantage, or with intent to compel any person to do any act against his will, shall be punished by imprisonment in the state prison for not more than fifteen years, or in the house of correction for not more than two

---

[5] During a prior case in 1996 in the Southern District of Florida, counsel for Mr. Farese attempted to retrieve the file in the Massachusetts state case, but as it was more than 30 years old at that time, it had already been destroyed. The only thing that counsel was able to secure regarding the 1965 case was an article from The Boston Globe. See Ex. C.

8

and one half years, or by a fine of not more than five thousand dollars, or both.

Massachusetts statute Ch. 274, § 6, governs permissible punishments for persons convicted of an "attempt" to commit a crime. It provides, in relevant part:

> § 6. Attempts to Commit Crimes.
>
> Whoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration, shall, except as otherwise provided, be punished as follows:
>
> First, by imprisonment in the state prison for not more than ten years, if he attempts to commit a crime punishable with death.
>
> Second, <u>by imprisonment in the state prison for not more than five years or in a jail or house of correction for not more than two and one half years, if he attempts to commit a crime, except any larceny under section thirty of chapter two hundred and sixty-six, punishable by imprisonment in the state prison for life or for five years or more</u>….

Mass. Gen. Stat. Ch. 274, § 6 (emphasis added).

Although the government <u>conceded</u> in the SDFL proceedings that "attempted extortion under Massachusetts law <u>does not carry a maximum penalty of ten years or more</u>" imprisonment, it argued there that "[t]he maximum period of incarceration is <u>irrelevant</u> under 18 U.S.C. § 3142(f)(1)(A) so long as a crime of violence is involved." <u>See</u> Govt. Res. dated Jan. 12, 2012, Ex. D. The government was plainly wrong.

As noted above, the government may only seek detention under 18 U.S.C. § 3142(f)(1)(D) of persons charged with a felony who have been convicted of two or more qualifying crimes, *i.e.*, crimes falling under § 3142(f)(1)(A), (B) or (C). The government would have § 3142(f)(1)(A) read to apply to <u>any</u> "crime of violence" regardless of its severity, indeed,

9

even a misdemeanor. A plain reading of the statute, however, shows that the government's reading is incorrect.

There is no question that subsections (A), (B) and (C) under 18 U.S.C. § 3142(f)(1) all refer to crimes carrying certain maximum sentences. § 3142(f)(1)(B), for instance, speaks of offenses "for which the maximum sentence is life imprisonment or death." § 3142(f)(1)(C) refers to narcotics offenses "for which a maximum term of imprisonment of ten years or more is prescribed." And § 3142(f)(1)(A) likewise contains the phrase "for which a maximum term of imprisonment of ten years or more is prescribed."

If one were to accept the government's argument that § 3142(f)(1)(A) applies to <u>any</u> conviction for a crime of violence, regardless of its severity, it would mean that the phrase "for which a maximum term of imprisonment of ten years or more is prescribed" contained in § 3142(f)(1)(A) applies only to "an offense listed in section 2332(b)(5)(B)" rather than to "a crime of violence" and "a violation of section 1591" as well. But this interpretation makes no sense since <u>every</u> "offense listed in section 2332(b)(5)(B)," which charges federal acts of terrorism, carries with it "a maximum term of imprisonment of ten years or more." Likewise, <u>every</u> "violation of section 1591," which charges sex trafficking of children or by force, fraud or coercion, also carries with it "a maximum term of imprisonment of ten years or more." Hence, with respect to violations of 18 U.S.C. §§ 2332(b)(5)(B) and 1591, there would have been no need to add, as Congress did, the qualifier "for which a maximum term of imprisonment of ten years or more is prescribed" to § 3142(f)(1)(A). Thus, the only logical reading of the statute is that the qualifier "for which a maximum term of imprisonment of ten years or more is

10

prescribed" was intended to restrict pre-trial detention for dangerousness based on "a crime of violence" to serious ones carrying with them significant punishment – that is, 10 years or more.

Courts within this District and throughout the country have applied the same reading that we do. See, e.g., United States v. Shrader, No. 09 Cr. 270, 2010 WL 358897, *2 (S.D.W.Va. Jan. 26, 2010) (finding that government may move for a detention hearing in a case involving, *inter alia*, "a crime of violence … for which a maximum term of imprisonment of 10 years or more is prescribed."); United States v. Bradley, No. 08 Cr. 39, 2009 WL 1338719, *3 (W.D.N.C. May 12, 2009) (same); United States v. Xavier, No. 08 Cr. 18, 2008 WL 4865988, *1 (D.Virgin Islands Nov. 10, 2008) (same); United States v. Chavez-Rivas, 536 F.Supp.2d 962, 965-66 (E.D.Wis. 2008) (same); United States v. Schlesinger, No. 02 Cr. 485, 2005 WL 1657043, *2 (E.D.N.Y. June 8, 2005) (same).

Therefore, since Mr. Farese's prior conviction is not "a crime of violence … for which a maximum term of imprisonment of 10 years or more is prescribed," Mr. Farese has not been convicted of two or more qualifying offense under § 3142(f)(1)(D). Accordingly, the government may not seek detention pursuant to § 3142(f)(1).

### B. The government cannot prove through clear and convincing evidence that Mr. Farese presents a danger that cannot be sufficiently abated through the proposed release conditions

Even if Mr. Farese's prior convictions qualify under § 3142(f)(1)(D) and thus entitles the government to a detention hearing based on dangerousness – which is not the case – the government is still unable to prove by clear and convincing evidence that Mr. Farese poses such a danger that no conditions or combinations of conditions would sufficiently mitigate the risk.

11

Indeed, an analysis of the § 3142(g) factors shows that the government cannot meet its dual burden.

> **1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device**

As discussed above, Mr. Farese is charged solely with laundering and conspiring to launder $40,000 believed to be proceeds of specified illegal activity on behalf of the government's cooperating witness Reynolds Maragni. The charges are based not on Mr. Farese's laundering of proceeds or agreement to do so, but rather his alleged approval of another person – his co-defendant Pat Truglia – doing so. If convicted at trial, Mr. Farese faces a guidelines range of 27 to 33 months imprisonment. Notably, his co-defendant Pat Truglia, the person who allegedly laundered the funds, is released on a $100,000 bond.

> **2. The weight of the evidence against Mr. Farese**

The evidence against Mr. Farese is extremely weak. At no time did Mr. Farese have contact with Truglia and authorize or approve his actions in laundering money for Maragni. Indeed, even the complaint states that Truglia "volunteered" to launder the funds for Maragni before Maragni said anything to Truglia about Mr. Farese's ostensible knowledge or approval. See Complaint, Ex. A, at 11-12, ¶ 21. At most then, Mr. Farese was made aware by Maragni that Maragni had asked Truglia to launder $40,000 for him and that Truglia had done so. This evidence is not even legally sufficient to support a conviction.

### 3. Mr. Farese's history and characteristics

Mr. Farese, now 69 years old, has strong ties to his community, having resided there since 1974. He is presently retired and collects social security. He has been married to his wife Suzanne for more than 40 years. The couple has one daughter Christine Agastinelli, now 42, and two grandchildren, who also reside in South Florida. Mr. Farese has two brothers, Vincent, 80, who resides in South Florida, and Jude, 72, who resides in California. Numerous members of Mr. Farese's extended family, including more than a dozen nephews and nieces, reside in South Florida as well. Physically, Mr. Farese is not in the greatest of health. He suffers from hypertension and a history of coronary artery disease. He also has degenerative discs in his lower back, arthritis in his right leg, a torn rotator cuff and a hernia.

Although Mr. Farese has a lengthy criminal history, <u>none</u> of it involves any threats or acts of violence. Indeed, even Mr. Farese's 47-year-old 1965 Massachusetts conviction that the government argues is a qualifying "crime of violence" was relatively minor and did not, as discussed above, involve any threats of physical violence. And although Mr. Farese was recorded on several occasions between May and December of 2011 by the government's cooperating witness Reynolds Maragni, <u>nothing</u> in those recordings even suggested that Mr. Farese had engaged or would engage in acts of violence.

Most significantly, in his last federal case in 1996 in the Southern District of Florida, Mr. Farese was <u>released on bond and fully abided by his pretrial conditions</u>. And, notably, he was facing significantly more time there (108 to 135 months) than he does here (27 to 33 months). There too, the government made the same arguments it did upon Mr. Farese's arrest here, including wrongly arguing that Mr. Farese's 1965 Massachusetts conviction constituted a

13

qualifying prior offense for purposes of 18 U.S.C. § 3142 (f)(1)(D). Disagreeing with the government's analysis, the District Judge presiding over Mr. Farese's case, Honorable Edward B. Davis, released Mr. Farese on bond, reversing the detention order of Magistrate Vitunac (notably, the same magistrate judge who here again detained Mr. Farese pending his transport to this jurisdiction).

### 4. The nature and seriousness of the danger to any person or the community that would be posed by Mr. Farese's release

No evidence shows that Mr. Farese poses a serious danger to another. Although the government argues that Mr. Farese is a danger by virtue of his membership in the Colombo family, membership in the Mafia is not a crime. See United States v. Bonanno Organized Crime Family of La Cosa Nostra, 683 F.Supp. 1411, 1429 (E.D.N.Y. 1988) ("Congress specifically declined to make mere membership in an organized crime organization a RICO offense."). Thus, it certainly does not establish a clear and convincing basis for detention on the grounds of dangerousness.

Accordingly, numerous defendants within this and other circuits have been released on bail despite allegations of high-ranking positions or other involvement in organized crime. Indeed, only a few months ago, the Second Circuit reversed a district court's detention order in United States v. Alphonse Trucchio, No. 11 Cr. 2591 (2d Cir. Sept. 9, 2011), despite the government's allegations there that the defendant posed a risk of danger and flight because (1) he faced a guidelines sentence of life imprisonment for the racketeering offenses with which he was charged, which included cocaine, marijuana and ecstasy distribution; assault in aid of racketeering; loansharking; and extortionate collection of debt; (2) he was a "captain" in the

14

Gambino crime family; (3) he had directly been involved in violent activity; (4) he was previously convicted of enterprise corruption; and (5) he continued to commit crimes while on parole. Notably, despite the fact that the narcotics charges against Trucchio triggered the rebuttal presumption in favor of detention, the Second Circuit held that the district court's pretrial detention decision was erroneous. Id. See also United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991) ("[A]lthough in theory a Mafia Boss [is] an intimidating and highly dangerous character, the government has not demonstrated that this Boss poses a significant danger, or at least not a danger that could not be overcome given appropriate conditions") (emphasis in original); United States v. Gigante, 85 F.3d 83, 84 (2d Cir. 1996) (noting that Judge Nickerson had set bail for the alleged "boss" of the Genovese organized crime family); United States v. Modica, 09 Cr. 1243 (S.D.N.Y. 2010) (Kaplan, J.) (release on bail of Onofrio Modica, an alleged powerful Gambino family soldier, despite racketeering charges including double murder, jury tampering, assault and extortion carrying a potential life sentences); United States v. Agate, 08 Cr. 076 (E.D.N.Y. 2008) (Weinstein, J.) (numerous alleged high-ranking organized crime members charged with violence released); United States v. Cutaia, 08 Cr. 097 (E.D.N.Y. 2008) (Cogan, J.) (same); United States v. Spero, 99 Cr. 520 (E.D.N.Y. 1999) (Korman, J.) (alleged Bonanno acting boss released despite four murder charges); United States v. Gotti, 98 Cr. 042 (S.D.N.Y. 1998) (Parker, J.) (alleged Gambino acting boss released); United States v. Bellomo, 96 Cr. 430 (S.D.N.Y. 1996) (Kaplan, J.) (release on bail of alleged Acting Underboss Mickey Generoso, despite charges of conspiracy to murder); United States v. Orena, 93 Cr. 1366 (E.D.N.Y. 1993) (Korman, J.) (son of Colombo acting boss released); United States v. Failla, 93 Cr. 294 (E.D.N.Y. 1993) (Sifton, J.) (numerous defendants alleged to be high-ranking members

15

of the Gambino family released on bail); United States v. Russo, 92 Cr. 529 (S.D.N.Y. 1992) (Cedarbaum, J.) (release of Anthony Russo, alleged to be a captain in a Mafia family).

It is also significant to note that, despite the government's contentions regarding Mr. Farese's supposed status in the Colombo family, he is charged in this case not with racketeering, but only with money laundering. And, critically, in Mr. Farese's 1996 case, where he was charged with racketeering and far more serious offenses than he is now, he was released and adhered to his pretrial release conditions.

Therefore, the government cannot clearly and convincingly demonstrate that any danger Mr. Farese poses is so serious that it cannot be sufficiently abated by the conditions proposed.

## II. THE PROPOSED CONDITIONS OF RELEASE SUFFICIENTLY MITIGATE ANY RISK OF FLIGHT MR. FARESE MIGHT CONCEIVABLY POSE

As discussed above, Mr. Farese is charged here only with aiding in laundering and conspiring to launder $40,000 for cooperating witness Maragni. The evidence is extremely thin; indeed, the proof appears to be legally insufficient to support a conviction. Moreover, Mr. Farese faces a relatively small amount of time even if convicted at trial – 27 to 33 months. Thus, if the charges are not dismissed prior to trial, Mr. Farese fully intends to proceed to trial and expects to be exonerated.

Further, Mr. Farese's history unequivocally demonstrates that he is not a flight risk. Indeed, he appeared as required in his 1996 case in the SDFL, despite facing substantially more prison time. While his conditions of release were restrictive, Mr. Farese was given permission to travel to Massachusetts and elsewhere and always returned to the jurisdiction as required.

16

Although the government has questioned Mr. Farese's means of support, there is no basis for any concern. Mr. Farese is supported primarily by his wife Suzanne, who owns commercial property, including a night club, and has a real estate business. While Mr. Farese has no accumulated wealth, Mrs. Farese earns a modest income from her businesses and was also the beneficiary of a multi-million dollar civil judgment in 2006. In addition, Mr. Farese was employed between 2005 and 2009 by RAK Ceramics before retiring and receives $677 in monthly social security benefits.

Further, any allegation by the government that Mr. Farese has used aliases in the past (as it claimed in the SDFL proceedings) is simply wrong and unsupported by any evidence. He has never used a false name, false identification or a false social security number. Additionally, any claim that Mr. Farese jumped bail in 1967 – notably some 45 years ago – is similarly wrong. The bail jumping notation in the NCIC report is due to the fact that Mr. Farese was simply late to court on one occasion; when he arrived, the bail jumping charge was dismissed.

As discussed above, Mr. Farese proposes release on a one million dollar bond secured by property owned by his wife, and he agrees to restrictive travel conditions, including electronic monitoring, as well as any other conditions the Court deems necessary to alleviate any concern it may have. Thus, to the extent that the Court believes Mr. Farese presents any flight risk, there is no question that there exist conditions that will reasonably assure Mr. Farese's appearance as required.

## **CONCLUSION**

For the reasons set forth above, the government is unable to prove that Mr. Farese presents a danger or flight risk that is not sufficiently mitigated by the proposed conditions of release.  Accordingly, we respectfully ask that the Court release Mr. Farese on a one million dollar bond secured by his wife's property, together with any other conditions the Court deems appropriate.

Dated: New York, New York
March 5, 2012

Respectfully submitted,
/s/
Sarita Kedia
Sarita Kedia Law Offices, P.C.
5 East 22nd Street, Suite 7B
New York, New York  10010
(212) 681-0202