

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:EAG/JD
F.#2011R02065

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 5, 2012

By ECF

The Honorable Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  United States v. Thomas Farese
           Docket No. M-12-005/ 12 CR 094 (FB)

Dear Judge Levy:

      The government respectfully submits this letter in support of its motion for a permanent order of detention as to defendant Thomas Farese upon Farese's initial appearance in the Eastern District of New York.  As set forth below, Farese poses a danger to the community and a risk of flight, and should be detained pending trial.

BACKGROUND

      On January 3, 2012, the Hon. Viktor V. Pohorelsky issued a warrant ordering the arrest of Farese for money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B).  In support of this motion, the government hereby incorporates by reference the complaint and affidavit filed on January 3, 2012, against Farese (hereinafter, the "Complaint"), a copy of which was previously unsealed on the public docket.

      The Complaint identifies Farese as a high-ranking member of the Colombo organized crime family of La Cosa Nostra (the "Colombo family"), a violent criminal enterprise that engages in a litany of crimes, including, among others, murder, robbery, extortion, and obstruction of justice.  As part of his association with and membership in the Colombo family, Farese has participated in the use of extortionate means to collect a debt, narcotics distribution, illegal gambling and money laundering.

March 5, 2012
Page 2

On January 5, 2012, Farese was arrested in the Southern District of Florida on the complaint.  Later that day, Farese had an initial appearance in the Southern District of Florida before the Honorable Frank J. Lynch, Jr., who scheduled a removal and identity hearing pursuant to Federal Rule of Criminal Procedure 5(c) ("Rule 5(c)") for January 6, 2012.  (<u>United States v. Thomas Farese</u>, 12 MJ 1 (FJL).  On January 6, 2012, at Farese's request, the hearing was adjourned until January 11, 2012.

On January 11, 2012, the hearing was held before the Honorable Anne E. Vitunac, United States Magistrate Judge.  At the hearing, Special Agent Scott Curtis of the New York Office of the Federal Bureau of Investigation ("FBI") testified at length about the charge alleged in the complaint and Farese's position as a high-ranking member of the Colombo organized crime family of La Cosa Nostra.  A copy of the testimony is being filed by hand for the Court's reference.  That day, Judge Vitunac "found sufficient evidence for removal" but reserved decision as to whether the defendant would be transferred to the Eastern District of New York in custody.  On January 18, 2012, the Court entered a permanent order of detention, expressly noting that Agent Curtis's testimony established probable cause to believe that Farese had committed the charged crime, and issued a Warrant of Removal as to Farese.

DISCUSSION

I.   <u>Legal Standard</u>

   A.   <u>Bail Reform Act</u>

Under the Bail Reform Act, 18 U.S.C. § 3141 <u>et seq.</u>, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  <u>See</u> 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community").  A finding of dangerousness must be supported by clear and convincing evidence.  <u>See</u> <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995); <u>United States v. Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985).  A finding of risk of flight must be supported by a preponderance of the evidence.  <u>See</u> <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987); <u>Chimurenga</u>, 760 F.2d at 405.

March 5, 2012
Page 3

       The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g).

    B.    <u>Organized Crime Defendants</u>

       Courts have routinely faced the issue of pretrial detention of organized crime defendants charged with racketeering-related offenses.  <u>See</u>, <u>e.g.</u>, <u>United States v. Cirillo</u>, Cr. No. 05-212 (SLT), slip op. (E.D.N.Y. 2005) (Genovese family acting bosses Dominick Cirillo and Lawrence Dentico, as well as Genovese family captain Anthony Antico, detained as dangers to the community), <u>aff'd</u>, 149 Fed. Appx. 40 (2d Cir. 2005); <u>United States v. Gotti</u>, 219 F. Supp. 2d 296, 299-300 (E.D.N.Y. 2002) (Gambino family acting boss Peter Gotti detained as danger to the community), <u>aff'd</u>, <u>United States v. Ciccone</u>, 312 F.3d 535, 543 (2d Cir. 2002); <u>United States v. Agnello</u>, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (Gambino family captain Carmine Agnello detained as danger to the community); <u>United States v. Defede</u>, 7 F. Supp. 2d 390, 395-96 (S.D.N.Y. 1998) (Luchese family acting boss Joseph Defede detained as danger to the community); <u>United States v. Salerno</u>, 631 F. Supp. 1364, 1375 (S.D.N.Y. 1986) (Genovese acting boss and captain detained as danger to the community), <u>order vacated</u>, 794 F.2d 64 (2d Cir.), <u>order reinstated</u>, 829 F.2d 345 (2d Cir. 1987).

       Together, these cases stand, at the very least, for the following propositions: (1) leaders of a violent organized criminal enterprise are dangerous due to their position of authority in that enterprise; (2) organized crime defendants often constitute dangers to the community due to the high likelihood that they will continue to commit crimes if released on bail; and (3) elaborate bail packages involving home detention and electronic monitoring are insufficient safeguards to protect the community against dangerous organized crime defendants.

      i.    <u>Organized Crime Leaders Are Dangers to the Community</u>

       Pretrial detention is warranted where, as here, a defendant is a leader or high-ranking member of a criminal organization whose activities routinely include violence and threats of violence.  <u>See</u> <u>Ciccone</u>, 312 F.3d at 543; <u>United States v. Colombo</u>, 777 F.2d 96, 99-100 (2d Cir. 1985); <u>United States v.</u>

March 5, 2012
Page 4

<u>Bellomo</u>, 944 F. Supp. 1160, 1166 (S.D.N.Y. 1996).  Courts in the Second Circuit have recognized that when organized crime depends on a pattern of violent conduct, the risk to the community is substantial and justifies detention.

For example, in <u>Defede</u>, Joseph Defede was charged with extortion and extortion conspiracy.  The district court ordered Defede's pretrial detention, finding that the government had shown by clear and convincing evidence that Defede was the acting boss of the Luchese family, thus rendering him a danger to public safety:  "The acting boss of the Luchese family supervises all of its far-flung criminal activities, including acts of violence.  Defede's continued liberty therefore presents a substantial danger to the public[.]"  <u>Defede</u>, 7 F. Supp. 2d at 395.

More recently, a court denied bail to the acting boss of the Genovese family who "participated at the highest levels in directing an organization alleged in the indictment to be committed to acts of violence to perpetuate its activities and insulate itself from detection by law enforcement," <u>Cirillo</u>, slip. op. at 7, as well as a former acting boss who "is at the highest levels of the Genovese family, participating in highly secret induction ceremonies and sit-downs, and representing the family in important meetings," <u>id.</u> at 11.  The Second Circuit affirmed those findings by summary order.  <u>See</u> 149 Fed. Appx. at 43 (2d Cir. 2005) ("This court has affirmed the detention of the leaders of organized crime enterprises on
the ground that their continued liberty presents a risk to the public not only from their own violent activities but from those of subordinates whom they supervise.") (citing <u>Ciccone</u>, 312 F.3d at 543).

In addition, to be detained as a danger to the community, an organized crime defendant need not be charged in specific predicate acts of violence; it is enough that his position is at the helm of a violent organization.  <u>Ciccone</u>, 312 F.3d at 542-43; <u>see also</u> <u>Ferranti</u>, 66 F.3d at 543 (noting that the defendant need not have committed the violence himself; he can be deemed dangerous if he directed others to commit acts of violence) (citing <u>Colombo</u>, 777 F.2d at 98).  As one court has pointed out, an organized crime leader "is dangerous because inherent in the leadership position is the supervision of criminal activity that cannot be curtailed by any condition or combination of conditions of release."  <u>Gotti</u>, 219 F. Supp. 2d at 299-300 (citations omitted).

March 5, 2012
Page 5

  To be sure, courts' decisions to deny bail to organized crime leaders have not been based solely on the defendants' mere "association" with organized crime, but rather on the evidence that members of organized crime, and in particular, high-ranking members of organized crime, routinely engage in acts of violence as a result of their position in a criminal enterprise.  As the court held in Defede:

> [I]t is well established that persons who hold Defede's status routinely engage in conduct that is a menace to public safety. The argument thus is based not on the status, but on the inference that a person in Defede's position is quite likely to engage in dangerous conduct – just as one reasonably could infer that one holding the position of major league baseball pitcher is entirely likely to hurl a small white object in the direction of home plate.

7 F. Supp. 2d at 392 n.4.

  Moreover, in enacting the Bail Reform Act, Congress recognized that certain defendants, such as high-ranking members of an organized crime family fall within a "'small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community.'"  Colombo, 777 F.2d at 99 (quoting S. Rep. No. 225 98th Cong., 1st Sess. at 6-7, as reprinted in 1984 U.S. Code Cong. & Admin. News 3182 ("Senate Report"), 3188-89).

  Nor is the above caselaw narrowly limited to organized crime "bosses" or "acting bosses."  In Salerno, 631 F. Supp. at 1374-75, the court held that a defendant would be a danger to the community if released on bail based on evidence that he was a captain in an organized crime family who managed the enforcement operations of the enterprise.  Likewise, in Colombo, a captain of a crew in the Colombo family was ordered detained because the operation of that organization posed a risk to the public and a danger to the community by its "consistent pattern of orchestrating a series of violent criminal operations."  777 F.2d at 99-100 (internal quotation marks omitted).

March 5, 2012
Page 6

        ii.  Organized Crime Defendants Are Likely to Commit Crimes if Released on Bail

      Organized crime defendants also pose a particular threat to the community due to the continuing nature of the charged enterprise and its violent criminal activities.  At bottom, because organized crime defendants are career criminals who belong to an illegal enterprise, they pose a distinct threat to commit additional crimes if released on bail.  See Salerno, 631 F. Supp. at 1375 (finding that the illegal businesses of organized crime require constant attention and protection, and recognizing a strong incentive on the part of its leadership to continue business as usual).

      In addition, defendants pose a danger to the community not only when they commit acts of violence, but when it is likely that they will commit even non-violent crimes that are detrimental to the community.  See Senate Report at 3195 ("language referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . .  The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").  In Colombo, the court held "[i]n light of Congress' direction that '[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate.'"  777 F.2d at 99 (quoting Senate Report at 3189).  In Salerno, the court upheld the detention of two leaders of the Genovese organized crime family, noting:

> The activities of a criminal organization such as the Genovese Family do not cease with the arrest of its principals and their release on even the most stringent of bail conditions.  The illegal businesses, in place for many years, require constant attention and protection, or they will fail.  Under these circumstances, this court recognizes a strong incentive on the part of its leadership to continue business as usual.  When business as usual involves threats, beatings, and murder, the present danger such people pose in the community is self evident.

631 F. Supp. at 1375.

March 5, 2012
Page 7

### iii. Elaborate Bail Packages Are Insufficient to Protect the Community Against Violent Organized Crime Defendants

Finally, the Second Circuit repeatedly has rejected "elaborate" bail packages for dangerous defendants, including leaders of organized crime families shown to be involved in violent criminal activities.  See United States v. Dono, Nos. 07-5333-cr(L), 07-5334-cr(CON), 275 Fed. Appx. 35, 2008 WL 1813237, at *2-3 (2d Cir. Apr. 23, 2008) (rejecting conditions that included, among others, home detention and electronic monitoring, and a requirement that the defendant's father – a retired police officer – take "personal responsibility" for the defendant); Ferranti, 66 F.3d at 543-44 (rejecting $1 million bail secured by real property); United States v. Orena, 986 F.2d 628, 630-33 (2d Cir. 1993) (rejecting $3 million bail secured with real property, in-home detention, restricted visitation and telephone calls, and electronic monitoring); Colombo, 777 F.2d at 97, 100 (rejecting, among other conditions of release, $500,000 bail secured by real property).

The Second Circuit has viewed home detention and electronic monitoring as insufficient to protect the community against dangerous individuals.  In United States v. Millan, the Second Circuit held that:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills.  If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

4 F.3d 1039, 1049 (2d Cir. 1993) (internal citations and quotation marks omitted).  See also Orena, 986 F.2d at 632 ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal citation and quotation marks omitted).

Similarly, courts in the Eastern District of New York have denied dangerous defendants bail in recognition of the Second Circuit's dim view of the effectiveness of home detention and electronic monitoring.  See, e.g., Dono, 2008 WL 1813237, at *2-3 (noting that the idea that "'specified conditions of bail

March 5, 2012
Page 8

protect the public more than detention is flawed'") (quoting Orena, 986 F.2d at 632); United States v. Cantarella, No. 02-CR-307 (NGG), 2002 WL 31946862, at *3-4 (E.D.N.Y. Nov. 26, 2002) (adopting "principle" of "den[ying] bail to 'dangerous' defendants despite the availability of home detention and electronic surveillance and notwithstanding the value of a defendant's proposed bail package"); Agnello, 101 F. Supp. 2d at 116 ("the protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility"); United States v. Masotto, 811 F. Supp. 878, 884 (E.D.N.Y. 1993) (rejecting bail because "the Second Circuit appears to be saying to us that in the case of 'dangerous defendants' the Bail Reform Act does not contemplate the type of conditions suggested by this Court [including home confinement and electronic monitoring] and that, even if it did, the conditions would not protect the public or the community, given the ease with which many of them may be circumvented").

II.  The Defendant Should Be Detained

   A.  The Defendant Is a Danger to the Community

      The defendant poses a substantial danger to the community.  As discussed more specifically below, each of the relevant considerations under the Bail Reform Act strongly favors detention here.

March 5, 2012
Page 9

   As explained in the Complaint, the defendant is a long-standing member of the Colombo family, and has held the positions of soldier and captain in the Colombo family and was recently elevated to a position on the Colombo family administration, as the consigliere. In his position as the consigliere, the defendant has traveled from Florida, where he resides, to the New York City metropolitan area to meet with other high-ranking members of the Colombo family. For example, Farese traveled to Red Bank, New Jersey, between November 4, 2011 and November 6, 2011 to meet with Colombo family captain Joseph "Junior Lollipops" Carna, who himself is under indictment for racketeering conspiracy and who pled guilty on June 15, 2011,[1] to money laundering and money laundering conspiracy, and Colombo family acting captains Luca Dimatteo and Salvatore "Sally Boy" Castagno. In early December 2011, Farese advised a cooperating witness that he intended to travel to New York again at Christmastime to meet with high-ranking members of the Colombo family to discuss the affairs of the Colombo family. Records from Farese's parole officer reveal that Farese did, in fact, travel to New York at Christmastime.

   In connection with his membership in the Colombo family, Farese has engaged in a variety of tactics to avoid detection by law enforcement, demonstrating that even an elaborate bail package would not be sufficient to protect the community. For example, on one consensual recording, Farese advised a cooperating witness that "Sundays and holidays [were] the best" days to meet with other members of organized crime, presumably because Farese believed that fewer members of law enforcement would be working on those days. On another recording, he explained that to avoid detection by law enforcement, he frequently obtained new cellular telephones and made sure to take out the battery from the cellular telephone when he was not using the telephone. Farese also used associates of the Colombo family to pass messages in order to arrange meetings with other members of the Colombo family and arranged to meet with these Colombo family members at various residences in an attempt to avoid electronic surveillance by law enforcement. Finally, as detailed in the Complaint, Farese used an attorney to obtain a message from the current street boss of the Colombo family, who is currently incarcerated.

---

  [1] Carna violated the conditions of his bail set in connection with that indictment by meeting with Farese and others.

March 5, 2012
Page 10

      Farese also has numerous prior arrests and convictions. In the 1960s, Farese was arrested by federal and state authorities on several occasions for criminal activity involving, <u>inter alia</u>, larceny, uttering forged checks and money orders, interstate transportation of stolen property, extortion and bribery. In 1980, Farese was convicted of conspiracy to possess and possession of marijuana with intent to distribute, and engaging in a continuing criminal enterprise, and subsequently sentenced to 30 years' incarceration and six years of special parole. In 1996, while Farese was serving his term of special parole, Farese was charged with money laundering and racketeering conspiracy; he was later convicted of racketeering conspiracy and was sentenced to 87 months' incarceration and a three year term of supervised release. After he served his term of supervised release, Farese's six-year term of special parole began anew on April 24, 2008 and is scheduled to terminate on April 23, 2014.

      Notably, Farese has repeatedly violated courts' conditions of release, including while he was serving his term of special parole for his 1980 conviction and his term of supervised release for his conviction in connection with the 1996 arrest. For example, while serving his term of special parole, he committed the new crimes for which he was arrested in 1996. In addition, Farese violated the conditions of his three-year term of supervised release by meeting with convicted felons and members and associates of organized crime. Finally, Farese committed the very conduct that forms the basis for the pending charge -- and accepted an increased managerial role in a violent criminal organization -- while serving his term of special parole. In short, Farese has repeatedly demonstrated an inability to abide by conditions of release imposed by courts.

   B.   <u>The Defendant Poses a Risk of Flight</u>

      The defendant also poses a risk of flight. If convicted, the defendant faces a substantial sentence in light of his criminal history and parole violation. The significant sentence faced by Farese gives him a substantial incentive to flee. <u>See</u> <u>United States v. Dodge</u>, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

      Moreover, Farese's criminal history reveals that he has engaged in numerous acts of fraud, including bribery, larceny, forgery, uttering fraudulent checks, interstate transportation of stolen property and money laundering, evidencing his contempt for the law, a low likelihood of abiding by any release conditions,

March 5, 2012
Page 11

and an ability to flee.  See, e.g., United States v. Hollender, 162 F. Supp. 2d 261, 265-66 (S.D.N.Y. 2001) (a defendant's ability to flee, in light of involvement in "crimes the nature of which involve deception . . . [and] that those deceptions are alleged to have included the use of false and fictitious identities," supported a finding that the defendant was a flight risk).  In short, Farese's history of fraudulent conduct strongly suggests that he will not honor the conditions of pretrial release and that he has the capacity to flee to avoid prosecution.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court enter a permanent order of detention with respect to defendant Thomas Farese upon Farese's initial appearance in the Eastern District of New York.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney

By:    /s/
     Elizabeth A. Geddes
     Jack Dennehy
     Assistant U.S. Attorneys
     (718) 254-6430
     (718) 254-6133

Enclosures

cc:  Clerk of the Court (by ECF)